NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

LINDA BACALZO,

                Plaintiff,

      v.

CREDIT CONTROL, LLC,

                Defendant.

Civil No. 20-16904 (KMW/MJS)

Appearances:

Stuart Werbin, Esq.
      Counsel for Plaintiff Linda Bacalzo

Sean Michael O'Brien, Esq.
      Counsel for Defendant Credit Control, LLC

**WILLIAMS**, District Judge

## OPINION

### I. INTRODUCTION

This matter comes before this Court pursuant to the Motion for Summary Judgment filed by Defendant Credit Control, LLC ("Credit Control"). Credit Control sent Plaintiff Linda Bacalzo ("Bacalzo") a debt collection letter containing two mailing addresses, a post office box address and physical street address, as well as a website. Bacalzo claims that the debt collection letter violates provisions of the Fair Debt Collection Practices Act ("FDCPA") because the least sophisticated debtor would be confused or misled about which address to send a dispute. For the reasons

articulated below, the Court agrees with Credit Control and finds the debt collection letter does not

violate the FDCPA. The Court grants Credit Control's Motion for Summary Judgment.[1]

## II. BACKGROUND

The facts in this case are straightforward, largely undisputed, and mostly derived from the

four corners of the debt collection letter at issue. Thus, an image of the letter follows.



---

[1] This Court has jurisdiction pursuant to 15 U.S.C § 1692k(d) and 28 U.S.C. § 1331.

2

*See* Def.'s Statement of Material Facts Not in Dispute ("SMF"), ECF No. 12-2, Ex. A. Credit Control sent the September 10, 2020 debt collection letter to Bacalzo, attempting to collect a debt allegedly owed by Bacalzo. Compl., ECF No. 1-2, ¶¶ 6, 8; *see also* Def.'s SMF ¶ 1. The letter contained two mailing addresses for Credit Control. The first address, PO Box 31179, Tampa, Florida 33631 ("P.O. Box"), appears four different times in the letter: the top left corner (the address does not appear along with Credit Control's name), the top right corner (this address appears along with Credit Control's name, office hours, telephone numbers, and website), the top right side directly above the body of the letter (appearing along with Credit Control's name), and within the body of the letter. Def's SMF, Ex. A. The P.O. Box is referenced three times at the top of the letter and is separated from the body of the letter by a note instructing the recipient to "Detach Upper Portion and Return with Payment" ("detachable return coupon"). Def's SMF, Ex. A. The second address, 8001 Woodland Center Blvd., Suite 200, Tampa, Florida 33614 ("Street Address"), appears after Credit Control's name only once at the bottom of the letter along with the telephone numbers outlined at the top of the letter. Compl. ¶¶ 10-12; Def's SMF, Ex. A. The letter also contains Credit Control's website, appearing at the top of the letter with Credit Control's P.O. Box, office hours, and telephone number and within the body of the letter. Def.'s SMF, Ex. A. The letter contains language advising consumers that if they notify "this office in writing within the 30-day period that the debt . . . is disputed, this office will obtain verification of the debt . . ." *Id.*

It is undisputed that Bacalzo never wrote, sent an email, visited the website, or called Credit Control. Def.'s SMF; Pl.'s Responsive Statement of Material Facts ("RSMF"), ECF No. 13-1, ¶ 2. Bacalzo read the letter and hired an attorney. Def.'s SMF ¶ 2; Pl.'s RSMF ¶ 2. Bacalzo

acknowledged that she could have contacted Credit Control at the P.O. Box, the Street Address, the website, or by phone or electronic mail. Def.'s SMF ¶¶ 4-5; Pl.'s RSMF ¶¶ 4-5. Credit Control, relying on the Declaration of Robert Hall, Executive Vice President of Operations for Credit Control, receives correspondence from consumers at the P.O. Box, the Street Address, via its website, or by directing same to Hays Roden, Collection Supervisor, via Mr. Roden's email address outlined within the dispute letter. Def.'s SMF, Ex. C – Declaration of Robert Hall ("Hall Declaration"), ¶¶ 2-6. Mr. Hall declares that any disputes or requests for information received through any of the aforementioned means will be handled in accordance with Credit Control's policies and procedures. Hall Declaration ¶¶ 3-6. Plaintiff disputes the Hall Declaration on the premise that it is self-serving, Pl.'s RSMF ¶¶ 6-8, but presents no evidence to counter the Hall Declaration.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020)("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

4

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.''" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

**IV. DISCUSSION**

"In the preface to the Fair Debt Collection Practices Act, Congress explained that '[t]here is abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors.' Those tactics 'contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.'" *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008)(quoting 15 U.S.C. § 1692(a)). Thus, "[t]he FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020). The FDCPA is "a remedial statute that we 'construe ... broadly, so as to effect its purpose.'" *Rosenau v. Unifund*

*Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)(quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir.2006)).

Communications giving rise to claims under the FDCPA should be analyzed under the least sophisticated debtor standard. *Id.* The Third Circuit explained that "[t]his standard is lower than the standard of a reasonable debtor," noting that a "communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Id.* (internal citations and quotations omitted). According to the Third Circuit, the least sophisticated debtor standard is used to ensure that all consumers are protected, "the gullible as well as the shrewd." *Id.* However, "[a]lthough the 'least sophisticated debtor' standard is a low standard, it 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Id.* (quoting *Wilson v. Quadramed,* 225 F.3d 350, 354-55 (3d Cir.2000)). The least sophisticated debtor standard is objective, "meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015).

"'To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'" *Jensen*, 791 F.3d at 417 (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir.2014)). Here, Defendant concedes, and Plaintiff does not dispute, that only the fourth prong is at issue.

Bacalzo claims that Credit Control's debt collection letter containing multiple addresses without highlighting which address to send disputes or correspondence violated multiple FDCPA provisions, §§ 1692e, 1692e(10), and 1692g(b), because, in essence, it was misleading and overshadowed the validation notice. Compl. ¶¶ 29-36, 42, 48-49. This Court finds that this letter does not violate section 1692e, 1692e(10), or 1692g of the FDCPA and a contrary finding would run counter to the purpose and spirit of the Act – to protect consumers from *abusive, deceptive, and unfair* debt collection practices.

A few district courts outside of this Circuit have addressed this issue at the summary judgment stage. Thus, prior to dealing squarely with the violations alleged here and given the dearth of case law on this issue at the summary judgment stage, the Court finds it appropriate to review those cases with facts most analogous to those presented here. First, in *Saraci v. Convergent Outsourcing, Inc.*, the court granted summary judgment on plaintiff's claims alleging violations of the FDCPA relating to defendant's debt collection letter. No. 18-CV-6505 (BMC), 2019 WL 1062098, at *1 (E.D.N.Y. Mar. 6, 2019). In that case, defendant's address appeared in several locations in the letter: the top right-hand corner listed beneath the "Convergent" logo: Convergent Outsourcing, Inc., 800 SW 39th St./PO Box 9004, Renton, WA 98057, Mon-Fri 8AM-5PM PT, 877-227-0063; below the body of the letter, in a section labeled "3 CONVENIENT WAYS TO PAY," consumers were directed to mail payments to Convergent Outsourcing, Inc., PO Box 9004, Renton, WA 98057-9004; and in the top left-hand corner of the letter the following address appeared, ATERSO01, PO Box 1280, Oaks, PA 19456-1280, CHANGE SERVICE REQUESTED. *Id.* In *Saraci*, plaintiff argued that the inclusion of multiple addresses was deceptive because the letter did not direct the consumer to the correct address to mail disputes;

7

plaintiff did not claim that he tried to pay or dispute the alleged debt at any of the referenced addresses. *Id*. While the court noted that it is possible for the inclusion of multiple addresses on a debt collection letter to be misleading, the court found that this letter did not invite confusion because the letter directs consumers to mail written disputes to defendant's "office" and the Renton, Washington address was listed within the letter three different times including directly under defendant's name along with defendant's office hours and telephone number. *Id.* at *3. The court, noting that the case had strayed far afield from the goal of the FDCPA, indicated that nothing about the letter, which included a return envelope to ensure dispatch of the communication to the proper address, interfered with plaintiff's ability to dispute the debt. *Id.*

Next, in *Gansburg v. Credit Control, LLC*, the court addressed a letter from the same Defendant in this case, Credit Control, which directed the consumer to write to "this office" to obtain verification of the debt. No. 18-CV-5054 (FB) (ST), 2020 WL 1862928, at *1 (E.D.N.Y. Feb. 27, 2020). In *Gansburg*, Credit Control's letter had a Hazelwood post office box address ("Hazelwood address") that appeared two times in the letter and a different post office box address appearing in the upper-left-hand corner of the letter with the designation "Return Service Requested." *Id.* The plaintiff argued that the letter was deceptively confusing because it failed to inform the recipient which post office box to use for debt disputes. *Id.* The court agreed with the *Saraci* court finding that the least sophisticated debtor would know to mail the dispute to the Hazelwood address which appeared multiple times, including the heading of the letter and on the detachable pre-addressed payment slip. *Id.* The court further noted that plaintiff conceded, while contending it was irrelevant, that a dispute would have reached Credit Control at either address. *Id.* The court found the fact relevant because a collection letter is deceptively ambiguous if it could be

read to have two different meanings, one of which is **<u>inaccurate</u>**, and plaintiff offered nothing to distinguish the proposition. *Id.*

Finally, in *Smaia v. Nationwide Credit, Inc.*, the court considered a letter with two different post office boxes, one of which was located at the top header of the letter along with defendant's name, hours of operation, and telephone number ("PO Box 14581"). No. 19-CV-4247, 2021 WL 1535574, at *1 (E.D.N.Y. Apr. 19, 2021). The letter contained a similar debt verification statement as the letter before this Court in that it instructed the consumer to write to defendant at "this office" to dispute the validity of the debt. *Id.* The letter also outlined two different means for payment: an online portal and the post office box highlighted in the header. *Id.* at *2. Plaintiff argued that the least sophisticated debtor would be confused about which of the two addresses to send his or her written dispute and, thus, might not dispute the debt at all. *Id.* The court found that the facts in *Saraci* and *Gansburg* were like those presented (except the *Saraci* letter had a street address and post office box address) in that the presence of two addresses within a debt collection letter were found to comply with the FDCPA when, although not expressly stated, it was clear to the least sophisticated debtor which address to direct disputes. *Id.* at *3. The court found two separate mentions of PO Box 14581, common sense, and the trail of case law on the issue sufficient to reject plaintiff's claim that the letter with multiple addresses ran afoul of the FDCPA. *Id.*

### A.  Violation of §§ 1692e and 1692e(10)

Turning to the alleged violations of §§ 1692e and 1602e(10), Credit Control argues that it is not false, deceptive, or misleading for a collection notice to list multiple addresses when Credit Control has demonstrated that it accepts correspondence, including written disputes or requests for the name and address of the original creditor, at all the listed addresses. Def.'s Br., ECF No. 12-1,

10-12. Credit Control also argues that the least sophisticated debtor would not be confused by the letter and would have understood to mail a dispute to the P.O. Box because it appears: (1) four times in the letter, including as the letter's header along with Credit Control's office hours, telephone number, and website; and (2) the entire top third of the letter is a detachable return coupon reflecting the P.O. Box. *Id.* at 12-14. Credit Control also contends that the least sophisticated debtor would not find it unusual for a business to have a street address and a website and that correspondence could be received at all three. *Id.* at 14.

Relying upon *Rhee v. Client Servs., Inc.*, No. 19-CV-12253, 2020 WL 4188161, at *1 (D.N.J. July 21, 2020), Bacalzo argues that the debt collection letter violates the FDCPA because it did not provide instruction as to where to send a dispute nor did it state that disputes would be accepted at all of the addresses. Pl.'s Br. [ECF No. 13], 8. Bacalzo contends that not only would the least sophisticated debtor be confused about where to dispute the debt, he or she may also be frightened to contact the collection agency. *Id.*

Section 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C § 1692e. Section 1692e(10) is a catch-all provision prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. 1692e(10). The least sophisticated debtor standard is applied to claims under § 1692e. *Jensen,* 791 F.3d at 420. Courts should focus on "whether a debt collector's statement in a communication to a debtor would *deceive* or *mislead* the least sophisticated debtor." *Id.*

Here, Credit Control's letter does not use any false representation or deceptive means to collect the debt or obtain information nor is it misleading. Indeed, Credit Control's letter aligns

closely with the letters considered by the courts in *Saraci, Gansburg,* and *Smaia* and provides more clarity than the letters considered by those courts. In *Saraci*, the court in granting summary judgment considered a letter containing a street address, a post office box, and an additional post office box indicating "CHANGE SERVICE REQUESTED." The *Gansburg* and *Smaia* letters contained two different post office boxes. Each court found the least sophisticated debtor would have utilized the address more prominently displayed both in placement and numerosity. Credit Control's letter contains a singular P.O. Box – referenced four different times – and its Street Address, listed once at the very bottom of the letter. There is nothing unreasonable, misleading, or confusing, even to the least sophisticated debtor, for a company to have a post office box and physical street address. Notably, the detachable portion of the letter only contains Credit Control's P.O. Box – highlighted three different times. Thus, it seems reasonable that any consumer, including the least sophisticated debtor, would send correspondence to that address, even absent an express directive to do so, and there is no evidence before the Court leading to a contrary finding.

While the Court has considered Bacalzo's reliance on *Rhee v. Client Servs*, it is inapposite here as the *Rhee* court only determined whether the plaintiff stated a plausible claim for relief, a much different standard than one for summary judgment. As a corollary, Bacalzo's attempt to rely on only arguments, not facts, that least sophisticated debtors would be misled by the multiple addresses and would be afraid to contact Credit Control is fatal to her claims because at this stage Bacalzo must come forward with specific facts showing that there is a genuine issue for trial.

Finally, Credit Control presents facts, via the Hall Declaration, establishing that a dispute could have been sent to the P.O. Box, the Street Address, the website, or by writing to Mr. Roden – all are correct and, thus, cannot be misleading or deceptive. *See, e.g., Rosenau*, 539 F.3d at 222

("A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate."). While Plaintiff Bacalzo disputes the Hall Declaration by referring to it as "self-serving," she points to no evidence or facts contradicting Hall's declarations. Indeed, while courts should generally disregard contradictory or in other words "sham affidavits," *see Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007), there are no facts before this Court indicating that the Hall Declaration falls into this category thus, there is no reason for the Court to disregard same. On this record, the Court cannot find that Credit Control's letter was deceptive or misleading.

### B. Violation of § 1692g(b)

Bacalzo claims the letter violates § 1692g(b) because it is inconsistent with or overshadows §§ 1692g(a)(3) through (5). Compl. ¶¶ 29-35. While Bacalzo recites the relevant FDCPA provisions along with case law articulating the standard courts consider in assessing claims raised thereto, Bacalzo does not present detailed argument for the Court's consideration. *See* Pl.'s Br. 4-9. Thus, the Court assumes that Bacalzo offers the same argument set forth regarding the alleged § 1692e violations. Credit Control argues that the inclusion of multiple addresses does not overshadow Bacalzo's right to dispute the debt, receive a verification of debt, or the name and address of the original debtor, claiming that the letter provides effective notice regarding the debt, how to dispute it, inquire about it, or pay it. Def.'s Br. 16.

Section 1692g(b) "mandates the debt collector to cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer." *Wilson*, 225 F.3d at 353 (citing 15 U.S.C. 1692g(b)). The section further provides that

"[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C § 1692g(b).

Section 1692g(a) outlines information that must be included in a debt collection letter communication to a consumer, often referred to as the validation notice. 15 U.S.C. § 1692g(a); *Riccio,* 954 F.3d at 585. "[T]he debt validation provisions of section 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law." *Wilson*, 225 F.3d at 354. "In order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter-the required notice must also be conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354; *see also Riccio,* 954 F.3d at 593-94 (The debt collection notice should convey the § 1692g(a) requirements intelligibly and "the least sophisticated debtor should be able to read the notice and reasonably discern his or her rights."). A debt collection letter, or the contents therein, overshadows the validation notice "if it would make the least sophisticated consumer uncertain as to her rights." *Wilson*, 225 F.3d at 354. Whether language in a collection letter contradicts or overshadows the validation notice is a question of law. *Id.* at 353, n. 2.

This debt collection letter's inclusion of multiple addresses and its failure to expressly indicate where correspondence should be sent does not overshadow or detract from Credit Control's validation notice. The debt validation notice effectively conveyed and apprised Bacalzo of her rights with language substantially similar to the statute. *See Riccio*, 954 F.3d at 594 ("a collection notice can never mislead the least sophisticated debtor by relying on the language Congress chose"). Unlike an obscured validation notice or a notice overshadowed or contradicted

13

by other notices or terms, *see Wilson*, 225 F.3d at 355 (noting that "a collection letter will not meet the requirements of the Act where the validation notice is printed on the back and the front of the letter does not contain any reference to the notice, or one in which the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector."), Bacalzo does not complain about obfuscation of the validation notice, contradictory language within the notice, or Credit Control's failure to comply with the disclosures required by § 1692g(a). The letter's inclusion of its P.O. Box (on four occasions, including three referenced on the detachable return coupon) and Street Address, without expressly outlining which address to direct correspondence, does not alter this conclusion. This letter apprised Bacalzo of her rights and explicitly advises even the least sophisticated debtor to write to "this office" for verification of the debt. There are no facts establishing and it would be wholly unreasonable to find that the least sophisticated debtor, when presented with two mailing addresses – a P.O. Box (referenced four times in the letter) and a Street Address, a website, and telephone numbers, would simply do nothing if the person desired to dispute the debt.

### V. CONCLUSION

For the reasons set forth above, the Court finds that there is no genuine dispute as to a material fact, and that Credit Control is entitled to judgment as a matter of law. Therefore, the Court grants Credit Control's Motion for Summary Judgment. An accompanying Order will be entered.

Dated: June 7, 2022                    s/ Karen M. Williams
                                       KAREN M. WILLIAMS
                                       United States District Judge

14